# Abernathy *v.* Smith *et als.*

*Bill in Equity to Recover Money advanced on Land under agreement of Purchase, and to Enforce Lien claimed on the Land.*

*Contract for purchase of lands; tenancy in common; partition and ownership in general; when bill without equity.*—A., the husband of complainant, and one J. H. and S. H., agreed with S. to purchase from him certain lands, with stock, implements, &c., thereon, for $50,000, of which $14,500 was to be paid in cash, and the residue in two installments, at one and two years, to

[Abernathy v. Smith et als.]

secure which S. was to have a lien on the land. The H.'s made a cash payment of $9,000, and A. turned over an accepted draft, payable to himself, of $4,000, as a cash payment by him; whereupon A. and the H.'s took possession. In three years, the H.'s leased their interest to a tenant, who conducted the business with A. for one year, and then retired. During the fifth year, A. used the premises alone—the H.'s having apparently relinquished all their interest—at the end of which year, A. also abandoned the premises, and S., not having received any more purchase money, and not having conveyed the title, resumed possession,—

*Held:* 1. The relationship between A. and the H.'s appears to be that only which resulted from their joint ownership, so far as they had any of the real estate—and of that they were tenants in common.

2. If A. and the H.'s had completed their contract of purchase, they would each have been owner of one undivided third, as tenants in common, not as partners, and would have been entitled to a partition by which each might have his portion in severalty.

3. That as against S., the complainant (appellant) has wholly failed to make out any case.

4. No equity can arise out of such a case, that can entitle complainant to recover her $4,000 out of the H.'s, there being no bad faith on their part.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. ADAM C. FELDER.

The appellant, complainant below, alleges in her bill that she intermarried with one Samuel Abernathy, in December, 1859, in the county of Dallas; that before said marriage her name was Maria L. Sanders; that she owned and possessed in her own right, an estate in law and personal property accruing to her from the estate of E. W. Sanders, who had died in 1857, which was a separate estate in her under the Alabama statutes; that in April, 1866, her husband made some contract with appellees, Robert W. Smith, Samuel J. Hunter and Starke Hunter, by which certain lands in the counties of Clarke and Monroe were to be sold by said Smith to said Abernathy, and to said Samuel J. and Starke Hunter, and for which large payments were to be made by them to said Smith; that upon representations made by said Smith and Hunters, she was induced to sell a portion of her said separate estate for $4,000 to one Becker, who gave his draft on Messrs. Baker, Graham & Co., of Mobile, payable on December 1, 1866, for the purpose of making the first payment on the said purchase of lands; that said money was paid to said Smith, with the understanding on her part that she was to be secured by a mortgage by Smith on said lands, to secure her in the repayment of said $4,000; that no such security was ever given, and she alleges that she demanded of respondents it should be given or such repayment of money made; that in addition to the understanding before set forth, the said Smith agreed that the titles to the land would be made to her, to secure her, but that neither said Smith nor

[Abernathy v. Smith et als.]

the Hunters have done anything to secure or pay her said sum; wherefore she prays that said sum of money shall be paid to her as her statutory separate estate, and for such other relief that may secure to her said estate, &c.

Robert W. Smith, in his answer to the bill and interrogaries, denies all personal knowledge of any separate estate, as alleged in the bill. He states, further, that in 1866 he was applied to by S. J. and Starke Hunter, and Samuel Abernathy, to sell to them a plantation; that on the 9th of April, 1866, he (Smith) entered into a written contract with said Hunters and Abernathy, whereby he agreed to sell them the plantation, with the stock, farming utensils, &c. The purchasers agreed to reimburse Smith for all supplies he had furnished, or contracted for, on account of said plantation, from 1st January, 1866, to the date of the said contract of sale. He also testifies that notes for between twelve and thirteen thousand dollars of the cash purchase money had been given by the purchasers, it being agreed that the entire amount was to be $50,000, of which $14,500 was to be paid in cash; that said notes have fallen due and remain unpaid; that he has not given title deeds to said property, it being agreed that he should not do so until the said notes were fully paid; he denies that the complainant was ever induced by him, or any one acting for him, to dispose of any estate, separate or otherwise; he admits that he received, as part of the cash payment, the acceptance of a draft by Messrs. Baker, Graham & Co., of Mobile, for $4,000, due 1st December, 1866, which was paid on maturity; that said draft was handed to him by Samuel Abernathy, as his part of the cash payment; he denies that he knew said draft constituted any part of the separate estate of complainant, and states there was nothing to put him on his guard thereto; he denies that there was ever any agreement between him and complainant, or any one else, with respect to the payment of the said $4,000, or that he ever agreed to secure the repayment of said sum. The answer and testimony of Smith further states that Abernathy and his wife, the complainant, lived on the place, cultivated the lands, cut and sold large quantities of wood, having the use of two-thirds of said property for two years, and exclusive use for one year or more; that they used, consumed and disposed of personal property from said plantation to the value of several thousand dollars more than the $4,000 claimed, and "respondent says for these and other reasons, the complainant has been fully paid said $4,000, with interest thereon."

[Abernathy v. Smith et als.]

The complainant testified that she knew nothing of the transactions between her husband and said Smith, except what her husband told her.

Samuel Abernathy, complainant's husband, testified that he gave the draft to said Smith, and stated to him that "the draft belonged to my wife, and that he must secure her in the amount, and that she would sign the notes. This he said he would do, and asked me to indorse the notes by S. J. Hunter & Co. I did. These were the considerations upon which she signed the notes, and was distinctly understood by Col. Smith and myself."

The facts of the case as between complainant and the Hunters are sufficiently stated in the opinion.

The cause being submitted for final decree upon the bill, answers, exhibits, evidence, &c., the court considered that complainant was not entitled to relief, and ordered that the bill be dismissed at costs of complainant. This decree is now assigned as error.

ALEX. McKINSTRY and JOHN T. TAYLOR, for appellant.

GRANDIN & TOULMIN, *contra*.

No briefs came to Reporter.

MANNING, J.—Appellant wholly failed to make out against defendant Smith, the case alleged in her bill of complaint, or to show that the lands which he had contracted to sell her husband and the other defendants, and for which they had failed to pay, and abandoned to him, were chargeable with a lien for the repayment by Smith of so much of her money as had been paid therefor to him. Against Smith, plaintiff has entirely failed to show that she is entitled to any recourse.

It is insisted, however, that under the pleadings and evidence a decree ought to be rendered in her favor against the Hunters. According to her allegations, and the testimony, she was not interested as a party in the purchase of the property from Smith or a member of the firm of S. J. Hunter & Co., by which name the purchasers of the lands contracted to be sold by Smith, are designated in this cause. Her claim to a decree against them is based on the appropriation of money belonging to her separate estate, toward payment for the lands which had been bargained for with Smith; which appropriation was made under the following circumstances:

Without any previous association in business with one another, Samuel Abernathy, husband of complainant, and Samuel J. and Starke Hunter on one side, entered into an agreement with Robert W. Smith on the other, for the purchase from him of the lands referred to, on which there was a plantation, and of the stock, implements, &c., belonging thereto, for the sum of about $50,000. Of this they were to pay in cash $14,500, and the residue in two instalments, one and two years afterwards, to secure which Smith was to have a lien on the property. The Hunters, (that is, Samuel for himself and his brother Starke), made a payment of $9,000, and odd, on their share of the cash payment; and Abernathy, not having the money, used an accepted draft of $4,000 which he had received in consideration of a sale by him and his wife of property belonging to her separate estate, toward payment of his portion of the first or cash instalment to Smith. Thereupon the three purchasers took possession of the property; Abernathy (with his family) and Samuel J. Hunter occupying the premises and conducting the business. At the end of three years, the Hunters leased their interest in the premises for one year to other persons, who during that year conducted the business of the plantation in conjunction with Abernathy, and then retired; and during the fifth year Abernathy occupied, cultivated and used the property alone, the Hunters having withdrawn and apparently relinquished all interest therein. At the end of this year Abernathy also retired and abandoned the premises; and Smith, not having received any more of the purchase money during all this time, and not having conveyed the title out of himself, resumed possession of the lands, stripped of all the stock and implements of value with which it was supplied at the time he bargained it to them.

The precise character of the relation of Abernathy and the Hunters between themselves, whether that of partners or tenants in common, does not seem to have been settled by any definite agreement on the subject. Abernathy, who kept the books and accounts relating to their transactions, used in some of these the name of S. J. Hunter & Co., and when he transferred to Smith the accepted draft for $4,000, which was payable to himself, he first indorsed his own name upon it, and then that of S. J. Hunter & Co. But this was not done in pursuance of any agreement with them, or with their consent or knowledge; and the land was not bought for sale again as merchandise. The relation of the purchasers appears, therefore, to have been that only which resulted

[Abernathy v. Smith et als.]

from their joint ownership, so far as they had any, of the real estate to which the transactions in controversy related; and of that they were tenants in common.— *Ware v. Owen,* 22 Ala. 212.

Each of the three, if they had completed their contract of purchase, and acquired title, would have been owner of one undivided third, and would have been entitled to a partition so as to have his portion in severalty. Each of them in fact paid a part of the first instalment of the price of the property. Abernathy did not pay more than his third of that, and it is not pretended that his co-tenants received any more of the products than he did. The land seems to have been abandoned by them all from inability to pay the residue of the purchase money and because it had declined so in value that it would not on a re-sale fetch a price sufficient to pay that residue.

No equity can arise out of such a case that will entitle complainant to recover her $4,000 out of Samuel J. and Starke Hunter, or out of them and Abernathy as partners. Though the venture was a joint one, each was to furnish individually his portion of the necessary price. The Hunters paid in their own money, and have lost it. Abernathy upon his part, paid his wife's money, and that is sunk. But the Hunters did not borrow that of her, nor did they and Abernathy together do so. How then can she make the Hunters liable for the loss of her money through an investment or employment of it by her husband, intended for his or her own benefit?

No doubt they all expected the transaction would prove to be advantageous. No doubt Mr. Abernathy intended to have the title to his one-third, or of some portion of it, conveyed to his wife. Probably he so informed her, and thus induced her to believe, as he doubtless believed himself, that she would be secured in the enjoyment of it as her separate estate. Her disappointment, as was the case in hundreds of other instances, was the result of miscalculation and unforeseen changes of values, certainly not of bad faith on the part of the Hunters.

Let the decree of the chancellor be affirmed.